Harry B. Frank et al., Respondents, v State of New York et al., Appellants.

Second Department, March 15, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz (Daniel M. Cohen* and *Samuel A. Hirshowitz* of counsel), for appellants.

*Queller, Fisher & Block (Fred Queller* of counsel), for respondents.

*Greenbaum, Wolff & Ernst (Roger Bryant Hunting* of counsel), for Committee for Modern Courts, Inc., and others, *amici curiae.*

## OPINION OF THE COURT

SHAPIRO, J.

Plaintiffs commenced this action to obtain, *inter alia,* a judgment declaring that Amendments to the Constitution of the State of New York numbered One, Two and Three, which were submitted to, and approved by, the voters of New York State at the general election held on November 8, 1977, are null and void.

Plaintiffs moved for summary judgment and defendants cross-moved for summary judgment in their favor. Special Term denied defendants' cross motion and granted plaintiffs' summary judgment saying: "the court hereby adjudges and declares the voter approval of the amendments to the Constitution of the State of New York numbered 1, 2 and 3 at the general election held on November 8, 1977, to be and is null and void, and further adjudges and declares that the submission of the said three amendments by the 1977 Legislature was and is null and void as being in contravention of the provisions of the State Constitution governing amendments thereto."

The judgment appealed from should be reversed and defendants' cross motion for summary judgment should be granted.

### PLAINTIFFS' CONTENTION

Simply stated, the contention of the plaintiffs is that the 1976 Legislature, when it passed the concurrent resolution embodying Amendments One, Two and Three and referred that resolution to the 1977 Legislature for action, intended and provided that the proposed constitutional amendments be submitted to the electorate as "a single package"; that the action of the 1977 Legislature in submitting the amendments to the electorate to be voted on separately made that submis-

sion null and void and that, therefore, despite their approval by the voters, they never were, in fact, validly adopted.

### THE FACTS

At an extraordinary session held on August 4, 1976, the 1976 Legislature adopted a concurrent resolution of the Senate and the Assembly proposing amendments to articles VI and VII of the Constitution of the State of New York. The proposed amendments provided for (1) a change in the way Judges of the Court of Appeals are selected, (2) the creation of a commission on judicial conduct and (3) the administration of the unified court system.

The 1976 concurrent resolution consisted of 19 sections. In addition to providing for the repeal of certain sections of the State Constitution and setting forth the proposed amendments, the 18th section, in accordance with the requirements of section 1 of article XIX of the Constitution, provided for the effective date of the amendments if they were ultimately approved.

The last section of the concurrent resolution reads: "§ 19. Resolved (if the Senate concur), That the foregoing amendments be referred to the first regular legislative session convening after the next succeeding general election of members of the assembly, and, in conformity with section one of article nineteen of the constitution, be published for three months previous to the time of such election."

As noted, the Senate did concur in the resolution.

Pursuant to the concurrent resolution, the Secretary of State, on August 6, 1976, caused the following publication to be made: "Pursuant to the provisions of section 1 of Article XIX of the Constitution of the State of New York and section 70(1) of the Election Law notice is hereby given that the following proposed amendment no. 7, of the Constitution of the State of New York is referred to the legislature to be chosen at the next general election of the members of the assembly in this state, to be held on the second day of November, 1976."[1]

■ Thereafter, as directed by section 19 of the concurrent

---

1. It should be noted that although the concurrent resolution spoke of "amendments", the Secretary of State's publication read in the singular—"the following proposed amendment." His characterization could not nullify the clear statement of the concurrent resolution, which dealt with "amendments".

resolution, and as authorized by section 1 of article XIX of the Constitution, the proposed amendments were referred "to the first regular legislative session convening after the next succeeding general election of members of the assembly"—which was the 1977 Legislature.[2] On June 28, 1977 the 1977 Legislature adopted a concurrent resolution in which sections 1 through 18, so far as they dealt with the proposed amendments, were a verbatim copy of the concurrent resolution adopted by the 1976 Legislature.

Section 19 of the concurrent resolution adopted by the 1977 Legislature, and which is not part of the proposed amendments, differed from section 19 of the resolution adopted by the 1976 Legislature only insofar as it omitted the requirement necessarily contained in the 1976 resolution that the amendments be referred to the next succeeding Legislature and in place thereof, and in conformity with the provisions of section 1 of article XIX of the Constitution, contained a provision setting forth the manner and method for submission of the proposed amendments to the voters at the general election in 1977.[3]

---

**2.** [1] Section 1 of article XIX of the Constitution, so far as here material, provides that after the first passage of a concurrent resolution containing a proposed amendment or amendments, "such proposed amendment or amendments shall be * * * referred to the *next regular legislative session* convening after the succeeding general election of members of the assembly * * * *and if in such legislative session,* such proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then *it shall be the duty of the legislature to submit each proposed amendment or amendments to the people* for approval *in such manner* and at such times *as the legislature shall prescribe".* (Emphasis supplied.)

The language of the Constitution thus seems to clearly indicate that the succeeding Legislature to which the proposed amendment or amendments are referred is the one that has "the duty * * * to submit each proposed amendment or amendments to the people * * * in such manner" as it shall prescribe. That is exactly what the second Legislature did here by section 19 of the concurrent resolution.

Purely as a matter of historical information, it should be noted that section 1 of article XIX first appeared in the 1821 Constitution and thereby remedied the omission of the Constitution of 1777 to provide for its own amendment (amendment by a constitutional convention was not authorized until the Constitution of 1846). It has remained essentially unchanged for more that 150 years. Since it prevents alteration of the fundamental law of the State, except by the most deliberative and time-consuming of processes, section 1 of article XIX must be deemed one of the most important provisions of our State Constitution. As stated by Judge CARDOZO, its objective is to preserve "[t]he integrity of the basic law * * * against hasty or ill-considered changes, the fruit of ignorance or passion" *(Browne v City of New York,* 241 NY 96, 109).

**3.** Section 19 of the concurrent resolution adopted by the 1977 Legislature reads: "§ 19. Resolved (if the Assembly concur), That the foregoing amendments to the

THE LAW

The contention of the plaintiffs that the three amendments were improperly submitted to the electorate to be voted on separately, is premised entirely on their contention, as they state in paragraph 26 of their complaint, that: "The Concurrent Resolution * * * passed by both houses of the Legislature in 1976 provided inter alia, for the purported amendments to the New York State Constitution to be presented for approval and ratification by the people as a single unit and package."

That contention was accepted by the Special Term and forms the principal basis for its decision. However, even microscopically examined, the 1976 concurrent resolution contains not a single reference to the manner in which the proposed amendments are to be submitted to the electorate for approval. On the contrary, section 19 of that resolution, in accordance with the command of section 1 of article XIX of the Constitution, merely provides "[t]hat the foregoing amendments be referred to the first regular legislative session convening after the next succeeding general election of members of the assembly" and for the required publication of those proposed amendments.

Thus, assuming, *arguendo,* that the 1976 Legislature was empowered to provide (by its concurrent resolution) for the form and manner in which the amendments were to be submitted to the People, it did not in fact purport to do so.[4]

provisions of sections two and thirty-six-a of article six and the repeal of subdivision c of section two of article six, in relation to the manner of selecting judges of the court of appeals, be placed on the ballot as one separate amendment designated as amendment number one, that the foregoing amendments to the provisions of sections four, seven, eight, eleven, twenty, twenty-six, twenty-eight, twenty-nine, thirty and thirty-six-a of article six and to the provisions of section one of article seven and the repeal of subdivision b of section seven, subdivision b of section eleven and section twenty-eight of article six, in relation to the administration of the unified court system, be placed on the ballot as one separate amendment designated as amendment number two, that the foregoing amendments to the provisions of sections twenty-two and thirty-six-a of article six and the repeal of section twenty-two of article six, in relation to the creation of a commission on judicial conduct, be placed on the ballot as one separate amendment designated as amendment number three; and that each such amendment be submitted to the people for approval at the general election to be held in the year nineteen hundred seventy-seven., all in accordance with the provisions of the election law."

4. In an effort to sustain its conclusion that the 1976 Legislature intended the proposed amendments to be submitted in "one package" to the voters, the Special Term dealt at length with the alleged "legislative intent" as evidenced by some of the comments made by various legislators during the debates preceding the adoption of the resolution. The fallacy in that reasoning needs no extended discussion, for it is

Since it is clear beyond dispute that the wording of the proposed amendments, as they are contained in sections 1 through 18 of the concurrent resolution adopted by the 1976 Legislature, is identical, word for word, with the wording of the proposed amendments as they are contained in sections 1 through 18 of the concurrent resolution adopted by the 1977 Legislature, their approval by the People at the general election held in November, 1977 should not be frustrated. For a court to determine otherwise by a strained reliance upon alleged "legislative intent" when both sets of amendments are exactly alike, would introduce a dangerous concept into our law and would do violence to a well-settled rule of statutory construction.

Subdivision c of section 150 of McKinney's Statutes summarizes the holding on the case law thusly: "Where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided. Since every presumption is in favor of the validity of a statute, every effort will be made to give its ambiguous language such a meaning that the act may stand without conflict with the fundamental law. If possible, a statute is required to be construed in favor of its constitutionality, and in such manner as to uphold its constitutionality" (McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd c).

So strong is the presumption of constitutionality that the courts have said that a plaintiff must prove the contrary "beyond a reasonable doubt" (*Nik-O-Lok Co. v Carey,* 52 AD2d 375, 379, affd 40 NY2d 1089) and that "absent a clear showing of unconstitutionality", legislative enactments must be sustained (*Wein v Beame,* 43 NY2d 326, 331; see, also, *Browne v City of New York,* 241 NY 96, 112).

Hence, the judgment appealed from should be reversed, the plaintiffs' motion for summary judgment denied, defend-

---

clear that the only time that legislative intent is looked to as an aid to judicial determination is when the statute, or as in this case, the resolution, is ambiguous. Here the 1976 concurrent resolution is clear and definite; therefore, the alleged "legislative intent", assuming that the debates are susceptible to the meaning claimed for them by the plaintiffs and the Special Term, and it is not, may not be resorted to for interpretive purposes (see *Matter of Taylor v Sise,* 33 NY2d 357, 365). Although "[c]oncurrent resolutions of the Senate and Assembly are neither statutes nor laws within the meaning of the Constitution" (McKinney's Cons Laws of NY, Book 1, Statutes, § 1), in interpreting their meaning "the rules of statutory interpretation" apply (McKinney's, Statutes, § 91). (See, also, McKinney's, Statutes, § 92.)

ants' cross motion for summary judgment granted and a declaration should issue that the amendments as set forth above and approved by the People in November, 1977 are now, and have been since January, 1978, part of the Constitution of the State of New York.

MARTUSCELLO, J. P., GULOTTA, COHALAN and MARGETT, JJ. concur.

Judgment of the Supreme Court, Kings County, entered March 3, 1978, reversed, on the law, without costs or disbursements, plaintiffs' motion for summary judgment denied, defendants' cross motion for summary judgment granted, and it is declared that Amendments One, Two and Three to the New York State Constitution approved at the general election held on November 8, 1977 were validly approved and are, and have been, a part of the Constitution of the State of New York, since January 1, 1978.