In the Matter of ALFRED FORTE, Petitioner, v SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS, CRIMINAL TERM, et al., Respondents.

Second Department, June 12, 1978

**APPEARANCES OF COUNSEL**

*John T. Gallagher (Frank S. Polestino* of counsel), for petitioner.

*John J. Santucci, District Attorney (Barry A. Schwartz* of counsel), respondent *pro se.*

*Louis J. Lefkowitz, Attorney-General (William C. Burstein* of counsel), for Judges of the Supreme Court, respondent (no brief filed).

## OPINION OF THE COURT

SHAPIRO, J.

This is an article 78 proceeding by petitioner, Alfred Forte, to prohibit the respondents from prosecuting him on a superseding indictment (No. 2647-77) returned by the Grand Jury of Queens County on the ground that his prosecution thereunder violates his rights under CPL 450.50.

### THE ISSUES

The question here—apparently one never before decided—is whether a District Attorney who appeals from an order which grants a defendant's motion to suppress and files the required statutory statement (CPL 450.20; 450.50) in connection with that appeal may nevertheless proceed with his prosecution, after the order of suppression has been affirmed, by obtaining a superseding indictment which contains the same charges set forth in the original indictment.

### BACKGROUND FACTS, STATUTES AND PROCEEDINGS AT CRIMINAL TERM AND ON APPEAL

The statutes involved are: "§ 450.20 Appeal by people to intermediate appellate court; in what cases authorized. An appeal to an intermediate appellate court may be taken as of right by the people from the following sentence and orders of a criminal court * * * 8. An order suppressing evidence, entered before trial pursuant to section 710.20; provided that the people file a statement in the appellate court pursuant to section 450.50."

"450.50 Appeal by people from order suppressing evidence; filing of statement in appellate court. 1. In taking an appeal, pursuant to subdivision eight of section 450.20, to an intermediate appellate court from an order of a criminal court suppressing evidence, the people must file, in addition to a notice of appeal or, as the case may be, an affidavit of errors, a statement asserting that the deprivation of the use of the evidence ordered suppressed has rendered the sum of the

proof available to the people with respect to a criminal charge which has been filed in the court either (a) insufficient as a matter of law, or (b) so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed. 2. The taking of an appeal by the people, pursuant to subdivision eight of section 450.20, from an order suppressing evidence constitutes a *bar to the prosecution of the accusatory instrument* involving the evidence ordered suppressed, unless and until such suppression order is reversed upon appeal and vacated." (Emphasis supplied.) ·

In January, 1976 the petitioner, Alfred Forte, together with a codefendant named Debra Makall, was indicted under Indictment No. 2/76 and charged therein with four counts of murder in the second degree. Thereafter Forte's assigned attorney, as part of an omnibus motion, made an application to suppress certain statements allegedly made by Forte to the police and the District Attorney. The motion was granted to the extent of ordering a hearing, which was held on January 28, 1977 and February 18, 1977, before Mr. Justice SMITH.

Before the hearing was held, the codefendant, Debra Mackall, withdrew her former plea of not guilty and entered a plea of guilty to manslaughter in the first degree under the second count of the indictment. It is admitted that: "As part of the consideration for accepting the plea, the District Attorney and the Court elicited a promise from Debra Mackall that she would cooperate with the police, the district attorney and the court on the trial of the petitioner and would testify on behalf of the People. It was indicated that the sentence she was to receive would, in part, be determined by the degree of cooperation which would be received from said Debra Mackall. The plea was taken by Debra Mackall and accepted by the court and the People on November 30, 1976."

On April 29, 1977 Mr. Justice SMITH granted petitioner's motion to suppress certain statements allegedly made by him and the fruits of those statements. Thereafter, the People filed a notice of appeal from the order entered on Mr. Justice SMITH's decision and, in accordance with the statutory prerequisite therefor (CPL 450.50), the District Attorney stated: "In the undersigned's opinion, the deprivation of the use of the evidence suppressed has rendered the sum of the proof available to the People with respect to the crime charged in the Indictment *so weak in its entirety that any reasonable possi-*

*bility of prosecuting such charge to a conviction has been effectively destroyed."* (Emphasis supplied.)

On October 11, 1977 we affirmed the order of suppression *(People v Forte,* 59 AD2d 724) saying: "In our opinion, the circumstances under which defendant was interrogated required that the *Miranda* warnings be given (cf. *People v Yukl,* 25 NY2d 585, cert den 400 US 851). Although the warnings were given (and tape recorded) and defendant stated that he wanted an attorney, the police turned off the tape recorder and continued to converse with him until he—in the absence of an attorney—gave incriminating statements, which were then placed on the tape recorder. The 'persuading' conversation was tantamount to an interrogation (see *Brewer v Williams,* 430 US 387), and was in violation of defendant's *Miranda* right to have the interrogation cease once he had stated that he wanted an attorney (see *People v Jackson,* 41 NY2d 146)."

The People then moved for leave to appeal to the Court of Appeals. The motion was assigned to Judge WACHTLER for determination. In a letter dated November 4, 1977, in which the District Attorney wrote to Judge WACHTLER requesting oral argument on his motion for leave to appeal, he said: "The importance of this case to the interests of the People cannot be overstated. The prosecution of a confessed murderer of two small children has been precluded by what we perceive to be an erroneous decision to suppress those confessions".

On December 8, 1977 the District Attorney's application for leave to appeal was denied by Judge WACHTLER. Forte then moved to dismiss the indictment. On the return date of the motion, the District Attorney interposed no objection thereto. However, he informed the court that a superseding indictment (No. 2647-77) had been returned against Forte. The superseding indictment was identical with the original indictment to which the motion had been directed, except that Debra Mackall was no longer named as a codefendant.

On January 20, 1978 Mr. Justice BROWNE formally dismissed the original indictment (which, in any event, was automatically dismissed when the superseding indictment was returned). In addition, Mr. Justice BROWNE considered petitioner's motion to dismiss the original indictment as if it had also been directed against the superseding indictment. He then held the superseding indictment to be valid and not barred by the provisions of CPL 450.50.

Prior to rendering his decision on Forte's motion, Mr. Justice Browne reviewed the testimony before both the Grand Jury which returned the original indictment and the Grand Jury which returned the superseding indictment. In his memorandum he made it clear that the only additional evidence presented to the second Grand Jury was the testimony of petitioner's former codefendant, Debra Mackall. It is not disputed that her testimony was available to the People on and after November 30, 1976 when she pleaded guilty—a period of about two and one-half months before the hearing on the motion to suppress was concluded, about five months before Mr. Justice Smith handed down his decision on the motion to suppress and almost six months before the District Attorney filed his CPL 450.50 statement in connection with his appeal of the suppression order to this court.

Because of the importance of the issue involved on petitioner's application for an order of prohibition, we directed that both sides appear before us and argue their respective contentions. In the course of the argument the District Attorney (by the Chief of his Appeals Bureau) candidly conceded that all of the testimony presented to the second Grand Jury was available to him as of November 30, 1976.

PRELIMINARY QUESTION

If the petitioner is correct in his contention that the District Attorney's unsuccessful appeal from the order of suppression divested him of the right to further prosecute the petitioner on the charges upon which both the original and the superseding indictments were based, then a proceeding in the nature of prohibition lies since the Criminal Term, in entertaining further prosecution, would be acting in excess of its powers. What the Court of Appeals said in that regard in La Rocca v Lane (37 NY2d 575, cert den 424 US 968) is particularly appropriate to the factual situation presented here. The court said (pp 579-580):

"If an adequate remedy is available, the burdening of judicial process with collateral proceedings, interruptive of the orderly administration of justice, would be unjustified. If, however, appeal or other proceedings would be inadequate to prevent the harm, and prohibition would furnish a more complete and efficacious remedy, it may be used even though other methods of redress are technically available (see, e.g., Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 437,

*supra; Matter of Culver Contr. Corp. v Humphrey,* 268 NY 26, 40, *supra).* For example, to force a person, faced with a court acting or threatening to act without jurisdiction, or in excess of its powers, to proceed in contempt, and to remain confined until 'ultimate justice' is obtained upon appeal in habeas corpus proceedings, would be to undermine the very reason for the remedy (see *People ex rel. Livingston v Wyatt,* 186 NY 383, 396 [E.T. BARTLETT, J., dissenting], contra, p 394; see, generally, Wolfram, 52 Col L Rev 334, *op. cit.,* pp 342-344).

"On this analysis, it is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition. Thus, even constitutional issues involving errors of substantive or procedural law are not cognizable by way of prohibition (see, e.g., *Matter of Blake v Hogan,* 25 NY2d 747, 748; *Matter of Watts v Supreme Ct. of Tioga County,* 36 AD2d 17, 18, mot for lv to app den 28 NY2d 714). If, however, a court acts without jurisdiction, or acts or threatens to act in excess of its powers, and it affirmatively appears that this will be done in violation of a person's, even a party's rights, but especially constitutional rights, prohibition will lie to restrain the excess of power (see *Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, 437-438, *supra; Matter of Kraemer v County Ct. of Suffolk County,* 6 NY2d 363, 365; *Matter of Abraham v Justices of Supreme Ct. of N.Y. County,* 37 NY2d 560; *Matter of Scott v McCaffrey,* 12 Misc 2d 671, 674)."

Accordingly, we hold that it is proper, in the light of the circumstances of this case, for this court to entertain petitioner's application for an order of prohibition.

### IS FURTHER PROSECUTION BARRED?

Petitioner's basic contention is that the statutory scheme permits an appeal by the People from an order granting suppression only if they can and do certify that an affirmance of the suppression order would result in an end to prosecution of the charges contained in the indictment. He asserts that the People, having lost their appeal, may not prosecute him on the very same charges by the procedural device of obtaining a superseding indictment.[1]

---

1. The contention of the prosecutor, that he may proceed on the superseding indictment because that was not the accusatory instrument at the time the petitioner obtained his suppression order, would transform the bar against prosecution contained in CPL 450.50 (subd 2) into a mirage; it would make a mockery of the intent

■ A review of how CPL 450.20 and 450.50 came into being sustains the petitioner's position. Though not referred to by either side, we have sent for and examined the legislative bill jacket dealing with the adoption of section 518-a of the Code of Criminal Procedure, which is now in substance embodied in CPL 450.20 and 450.50.[2]

On April 13, 1962 Assemblyman Richard Bartlett (now Chief Administrator of the Courts in this State) wrote a letter to the Governor's Counsel (Robert MacCrate) enclosing a memorandum in support of his bill, which resulted in section 518-a. In that memorandum he said (p 1):

"MEMORANDUM

"RE: S. INT.3573 (BERKOWITZ) PRINT
A. INT.4652 (BARTLETT) PRINT 5806

"AN ACT TO AMEND THE CODE OF CRIMINAL PROCEDURE IN RELATION TO RETURN OF PROPERTY AND SUPPRESSION OF EVIDENCE OBTAINED AS A RESULT OF UNLAWFUL SEARCH AND SEIZURE.

"*Purpose of bill:*

"The purpose of this bill is to provide a procedure whereby defendants and prospective defendants in criminal cases may contest the admissibility of physical evidence, and/or retrieve such property, claimed to have been obtained by the People as a result of unlawful search and seizure in violation of the federal Constitution, and to establish machinery for appellate review of trial court rulings upon those matters.

"*Summary of provisions of bill:*

---

and purpose of that enactment and would permit a prosecutor taking an appeal to file the required statutory statement and then entirely nullify its effect by the simple expedient of obtaining a superseding indictment containing the very same charges embodied in the first indictment. Furthermore, that contention disregards the wording of the statute which requires the prosecutor, upon taking his appeal, to certify that by the order of suppression "any reasonable possiblity of prosecuting *such charge* to a conviction has been effectively destroyed" (CPL 450.50, subd 1; emphasis supplied) and that '[t]he taking of an appeal by the people * * * constitutes a bar to the prosecution of the accusatory instrument *involving the evidence suppressed*" (CPL 450.50, subd 2; emphasis supplied). Clearly the superseding indictment here involves the very same charge "involving the evidence suppressed".

2. Following the enactment of section 518-a, the Legislature expanded the instances in which an unsuccessful appeal from a suppression order would bar prosecution of a defendant on an instrument involving the evidence ordered suppressed. Reference to confessions or admissions was added by chapter 846 of the Laws of 1965 and reference to eavesdropping evidence was added by chapter 1147 of the Laws of 1969.

Section 1 of the bill adds three new sections to the Code of Criminal Procedure, establishing motion procedure for the return of illegally obtained property or suppression of its use as evidence, designating the state of the proceedings during which the motion to suppress must be made, and stipulating the courts in which such motion must be made. * * *

"Section 2 of the bill provides for appeals by the People from adverse pre-trial orders upon motions to suppress. This section and the ensuing one (Sec. 3) collectively impose a condition upon such appeals which is calculated to permit them only when the trial court's order of suppression has inflicted finality upon the criminal case involved. In order to take an appeal, the People must file a statement declaring and conceding that, without the use of the evidence of which the order has deprived them, they have no prosecutable case, either as a matter of law or because prosecution of the case has been effectively destroyed by the granting of the motion. This statement and the institution of the appeal are given the legal effect of barring any prosecution upon the criminal charges or prospective charges involved unless the People are successful in obtaining appellate reversal. Thus, the prosecutor-appellant necessarily abandons any possiblity of proceeding with his case unless he can obtain the use of the seized evidence by reversal of the suppression order.

"Section 4 of the bill adds a new subdivision 7 to Section 519 of the Code, the statute defining the People's right to appeal to the Court of Appeals from adverse orders and judgments of the Appellate Division and other intermediate appellate courts. The new subdivision brings suppression orders into this appellate category.

"Section 5 of the bill amends Section 520 of the Code to provide a procedure for obtaining leave to appeal to the Court of Appeals in those cases. The change makes clear that orders upon motions to suppress are appealable to the Court of Appeals."

In approving the bill (L 1962, ch 954) which resulted in CPL 518-a, Governor Rockefeller said:

"This bill establishes for the first time in New York procedural rules in criminal cases relating to motions and appeals from orders entered on motions for the return of property or the suppression of evidence obtained as a result of unlawful search and seizure.

"The recent decision of the United States Supreme Court in the case of *Mapp. v. Ohio* has had far-reaching implications. Our Courts have hitherto adhered to the rule that evidence is not inadmissible in a criminal trial simply because it was illegally obtained. The *Mapp* decision has now mandated our Courts to follow the so-called exclusionary rule which prohibits the introduction or use of evidence which was illegally obtained. The procedures provided for in this bill implement that decision in New York.

"The bill:—prescribes a procedure for the making .of a motion to suppress. The motion is required to be made prior to commencement of trial, with stated exceptions;—designates the Courts in which motions to suppress shall be made;—allows appeals by the People as a matter of right upon the filing of a statement by the district attorney that an adverse ruling on a motion has effectively destroyed the People's case. *Such statement operates as a bar to further prosecution unless the order of the trial court is reversed on appeal;*—defines the People's right to appeal to successively higher appellate Courts from orders entered on such motions [emphasis supplied].

"The bill, in an earlier form, was submitted by the Temporary State Commission on Revision of the Penal Law and Criminal Code. It was thereafter amended in the Legislature to delete provisions authorizing interlocutory appeals by defendants and permitting appeal by the People only upon the granting of permission by a court. As thus amended it comes before me for executive action.

"The Commission will be able to consider the revised bill and to determine whether further amendments are desirable. In the meantime, it is important to the administration of criminal justice that the procedures provided for by this bill become a part of our Criminal Code." (NY Legis Ann, 1962, pp 391-392.)

CPL 450.50 (subd 2) provides that "[t]he taking of an appeal by the people * * * *constitutes a bar to the prosecution of the accusatory instrument involving the evidence ordered suppressed,* unless and until such suppression order is reversed upon appeal and vacated." (Emphasis supplied.) Since the language of the statute is crystal clear, reference to legislative intent is unnecessary (see *Frank v State of New York,* 61 AD2d 466, affd on opn of Mr. Justice SHAPIRO 44 NY2d 687). However, we have adverted thereto only because it demon-

strates beyond any possibility of doubt that it was the clear intent of all concerned that "these sections do not gratuitously accord the prosecutor a preliminary appellate attack upon any adverse evidentiary ruling before he proceeds to trial"; that he "cannot have his cake and eat it, too"; and that by "instituting an appeal, he concedes that the order of suppression is a death blow to his case, which can only be removed by appellate reversal, and he *forever* bars himself from prosecuting the case in the event of appellate failure on this point" (Bartlett memorandum, p 2). As the Governor succinctly stated in his message upon approving the bill: "The bill * * * allows appeals by the People as a matter of right upon the filing of a statement by the district attorney that an adverse ruling on a motion has effectively destroyed the People's case. Such statement operates as a bar to further prosecution unless the order of the trial court is reversed on appeal". (NY Legis Ann, 1969, p 391.)

Since the charges in the superseding indictment are the same as those in the original indictment, the affirmed order of suppression "constitutes a bar to the prosecution of the accusatory instrument involving the evidence ordered suppressed" (CPL 450.50, subd 2). This section is thus a statutory double jeopardy provision which prohibits further prosecution of a defendant on an instrument (here, the superseding indictment) "involving the evidence ordered suppressed".

If, as the District Attorney stated in his letter to Judge WACHTLER, "the prosecution of a confessed murderer of two small children has been precluded", that result flows, not from any arbitrary action by the courts, but from the required adherence to the law, which is binding not only upon the court, but also upon the District Attorney.[3]

The application of the petitioner for an order prohibiting his prosecution under Indictment No. 2647-77 should, therefore, be granted.

MOLLEN, P. J., DAMIANI and O'CONNOR, JJ., concur.

---

3. In his brief the District Attorney poses the question of what would happen in a case where a suppression order was upheld and consequently "the underlying accusatory instrument is ultimately dismissed and the defendant is freed" but thereafter "the defendant confesses to the crime for which he had previously been charged"? We need not reach that hypothetical situation for here the District Attorney conceded both in his brief and in his argument before us that the additional testimony supplied to the second Grand Jury was available to him before the petitioner's suppression motion was heard.

Petition granted, without costs or disbursements, and the respondents are prohibited from performing any further acts in connection with the prosecution of the petitioner under Indictment No. 2647-77.