OPINION OF THE COURT
Robert E. Fischer, J.
These separate special proceedings seeking declaratory and injunctive relief — consolidated for purposes of this decision— assert the invalidity of various postjudgment procedures provided by CPLR article 52 as violative of due process guarantees of the Federal and State Constitutions. The Attorney-General has been served in compliance with CPLR 1012 (subd [b]), but has not appeared.
The underlying facts in each proceeding are undisputed. In Cole, the respondent law firm, Goldberger, Pedersen & Hochron, representing a physician, obtained and entered a default judgment against the petitioner, Alan Cole, for $126.32 in February of 1977. After petitioner sent only small monthly payments in satisfaction, counsel delivered execution to the respondent Sheriff, John J. Andrews, who, on November 18 of that year, levied upon petitioner’s personal checking account, held by the respondent Marine Midland Trust Company of Southern New York. Petitioner was advised of the levy two days later by letter from the bank, which issued a check for $21.35, the amount then in the account, to the Sheriff on November 20. Alleging that the funds levied upon consisted solely of Social Security disability benefits, petitioner commenced this proceeding pursuant to CPLR 5239 by our order to show cause. After oral argument, the Sheriff agreed to hold the funds pending a hearing, which counsel for the judgment creditor later waived. Thereafter an order was presented and signed on February 14, 1978 releasing the . levied funds to the petitioner but reserving the constitutional issues presented.
In Reynolds, the respondent law firm of Carr and Rowlands obtained a default judgment in December of 1977 for $802.19 against the petitioner Dara L. Reynolds for breach of contract for services rendered by their client, the respondent Executive Spa for Men and Women, Inc. On January 12, 1978 after Mrs. Reynolds failed to heed counsel’s letters requesting payment, counsel issued notice to the respondent Binghamton Savings Bank restraining the account, held in the name of the Reynolds. Petitioners, upon first learning of the restraint over a week later when the bank refused to permit a withdrawal of *724 funds, commenced this CPLR 5239 proceeding by our order to show cause, alleging that the petitioners’ sole income and source for the account was veteran’s disability benefits awarded to petitioner John J. Reynolds. After issue was joined, respondents waived a factual hearing and permitted removal of the restraint on the account with this court reserving on the constitutional issues.
The CPLR sections here challenged on due process grounds are 5222 (restraining notice), 5230 (execution) and 5232 (levy on personal property). Each provides for issuance of process by a clerk of the court or the judgment creditor’s attorney once a money judgment has been obtained and is entered. Unlike section 5231 (income execution), no provision is made for notice to the judgment debtor before, during or following a restraint upon personal assets in the hands of a third party— except for a public notice requirement before the Sheriff sells assets in satisfaction of the debt (CPLR 5233, subd [b]) — unless the judgment creditor finds it necessary to commence a turnover proceeding against an otherwise recalcitrant debtor or garnishee, in which case notice to the debtor is specifically required (CPLR 5225, subd [b]; 5227).
Notwithstanding lack of notice, the restraining notice is effective against all current possession and future acquisitions of the debtor’s property, precluding alienation to any but the Sheriff for as long as one year, unless the garnishee chooses to withhold the cash equivalent of twice the amount due on the judgment (CPLR 5222, subd [b]). Levy by service of execution requires the garnishee to deliver forthwith all of the debtor’s property in possession and to pay all mature obligations to the Sheriff, the levy being good against future acquisitions for 90 days (CPLR 5232, subd [a]). Immediate levy by Sheriff’s seizure of personalty capable of delivery is likewise permitted (CPLR 5232, subd [b]).
When — or, under the notice provisions of the statute, if — the judgment debtor becomes aware of the restraint "[p]rior to the application of property or debt by a sheriff * * * to the satisfaction of a judgment” (CPLR 5239), he may commence a special proceeding — such as these before us — to vacate the execution and void the restraint or levy. Thus, petitioners maintain, no other method is provided for the debtor to assert his exemption, whether Federal or State, except for a plenary suit by the debtor for interference with exempt property after the fact (see CPLR 5205, subd [b]). Petitioners therefore main *725 tain that lack of notice and meaningful opportunity to contest such deprivations of their property — exempt but nonetheless restrained — denies them due process of law.
We must address the issue of mootness at the outset, in that these petitioners have successfully challenged the postjudgment restraints upon their assets. However, their counsel, the Broome Legal Assistance Corporation, has submitted proof of recurrence of such postjudgment restraint of the exempt assets of their clients who are, or are thereby rendered, indigent. Under such circumstances, and where, as here, the issues are well briefed and articulated, we may proceed to determine them upon the authority of Blye v Globe-Wernicke Realty Co. (33 NY2d 15, 19): "[I]t is well settled that judicial reluctance to decide questions which need not be reached should yield when, as here, important constitutional issues are raised and the controversy is of a kind likely to recur.”
Bearing in mind that the presumption of constitutionality of a State statute may only be rebutted by a clear showing which is beyond reasonable doubt (Frank v State of New York, 61 AD2d 466, 471), we begin with the general observation that the United States Supreme Court has consistently held that notice and hearing in some form must be provided an individual before final deprivation of a significant property interest (Mathews v Eldridge, 424 US 319, 333 and cases cited therein). Addressing, once again, the language of this State’s highest court in Blye (supra, pp 20-21) we are advised: "Procedural due process requires notice and an opportunity for a hearing before the State may deprive a person of a possessory interest in his property * * * The protection is not limited to necessaries * * * although the relative weight of the property interest involved may be relevant to the form of notice and hearing required by due process. Nor does the availability of the right turn on the relative degree of permanence of the deprivation, nor may it be defeated by provision for recovery of the property. Only an extraordinary or truly unusual situation will justify postponing notice and opportunity for a hearing.”
Although these principles were articulated in the context of statutorily sanctioned, prejudgment quasi-judicial or self-help remedies, we note that the postjudgment takings authorized by CPLR article 52 — with the exception of income execution — provide neither notice, judicial scrutiny, nor automatic hearing before the judgment debtor may be separated, temporarily or even permanently, from his personalty. Such *726 supplementary proceedings in aid of enforcement of money judgments, until recently, have been protected from constitutional attack by the reasoning articulated in the 1924 decision of the United States Supreme Court in Endicott Corp. v Encyclopedia Press (266 US 285, 288), wherein the rationale is succinctly stated: "[T]he established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,’ no further notice being 'necessary to advance justice.’ ” (Citing Ayres v Campbell, 9 Iowa 213, 216.)
Concededly, some courts have continued to accept the rationale of Endicott Corp. as viable (see, e.g., Plaza Hotel Assoc. v Wellington Assoc., 84 Misc 2d 777, 781; Warner/Elektra/Atlantic Corp. v B & R Radio & Tape Merchandisers, 570 P2d 1320, 1321-1322 [Col]; Pitts v Dallas Nurseries Garden Center, 545 SW2d 34, 37 [Tex]; see, also, Nowak-Rotunda-Young, Constitutional Law, p 507), despite the Supreme Court’s own expression of some doubt in this regard (see Hanner v DeMarcus, cert granted 389 US 926, cert den as improvidently granted 390 US 736 [dissent of Douglas, J, p 741]). However, recently articulated due process requirements applied to prejudgment remedies by the highest courts of this Nation (North Georgia Finishing v Di-Chem, Inc., 419 US 601; Mitchell v Grant Co., 416 US 600; Fuentes v Shevin, 407 US 67; Sniadach v Family Finance Corp. of Bay View, 395 US 337) and State (Sharrock v Dell Buick-Cadillac, 45 NY2d 152; Blye, etc., supra), raise new questions addressed to the viability of Endicott Corp. As a consequence of the intervening decisions, some courts have reassessed that rationale (see Brown v Liberty Loan Corp. of Duval, 539 F2d 1355, 1364, cert den 430 US 949; First Nat. Bank v Hasty, 410 F Supp 482, 489, n 8; Vail v Quinlan, 387 F Supp 630, 635, n 3), and rejected it (Betts v Tom, 431 F Supp 1369, 1372).
To the extent that the holding in Endicott Corp. is predicated upon a guarantee of notice and hearing in the underlying action, its reasoning is enhanced by an additional notice *727 provision recently engrafted upon the New York procedure for obtaining default judgments in certain cases (CPLR 308; L 1977, ch 344, § 1, eff Jan. 1, 1978). But, regardless of the juncture at which the judgment is obtained — after default in appearance, joinder of issue or even a trial on the merits— however the debtor might be obliged to foresee the postjudgment consequences to his nonexempt property (Endicott Corp. v Encyclopedia Press, 266 US 285, 288, supra) failing satisfaction of the judgment, can he constitutionally be required to suffer deprivation of exempt property unless he takes recourse to a special proceeding to retrieve it?
The petitioners here assert that the funds restrained in their respective bank accounts were composed entirely of Social Security (Cole) and veterans’ (Reynolds) disability benefits, which are alleged to be the sole sources of income for their respective families. The benefits themselves are of that class wherein the expectation of continuing entitlement has been deemed to be a sufficient "property” interest to afford constitutional protection (see Mathews v Eldridge, 424 US 319, 332, supra). Once received, as the only sources of income for the petitioners, these assets are akin to wages — "a specialized type of property presenting distinct problems in our economic system” (Sniadach v Family Finance Corp. of Bay View, 395 US 337, 340, supra) — the deprivation of which, for however long a duration, has the capacity to "drive a * * * family to the wall” (id, pp 341-342). However, not being wages, article 52 affords them none of the procedural safeguards prescribed for income executions (see CPLR 5231). Recognizing that both Brown v Liberty Loan Corp. (539 F2d 1355, 1368, supra) and First Nat. Bank v Hasty (410 F Supp 482, 490, supra) have recently held that even wages may be constitutionally garnisheed to satisfy a pre-existing judgment, we are nonetheless convinced that petitioners’ interest in the unrestrained use of these exempt assets — where we are not dealing with a rule of "necessity” (Fuentes v Shevin, 407 US 67, 89, supra) — is cognizable under the due process clauses of the Federal and State Constitutions.
It appears that once the property interest is deemed worthy of constitutional protection, the magnitude and duration of the deprivation of it bear only upon the timing and quality of process due (Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 20, supra). To determine the latter, we are obliged to balance the interests at stake (Goldberg v Kelly, 397 US *728 254, 262-263; Brown v Liberty Loan Corp., supra, p 1365) and arrive upon a "constitutional accommodation of the conflicting interests” (Mitchell v Grant Co., 416 US 600, 607, supra). In doing so, we must consider: "[T]he private interest * * * affected by the official action * * * the risk of an erroneous deprivation * * * through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and * * * the government’s interest, including the function involved and the * * * burdens that the additional or substitute procedural requirement would entail.” (Mathews v Eldridge, 424 US 319, 335, supra.)
This State has an obvious interest in effectuating the prompt and efficient enforcement of the money judgments of its courts (First Nat. Bank v Hasty, supra, p 490), with as little governmental involvement in the postjudgment proceedings as is constitutionally and practically possible. The judgment creditor shares this interest, as does the debtor, because it tends to increase the availability and reduce the cost of consumer credit. The State, in the judgment debtors’ behalf, is likewise interested in protecting exempt funds from erroneous seizures (Brown v Liberty Loan Corp., supra, p 1376). Finally, the judgment debtor is entitled to the earliest possible notice in order to enable him to press his claim of exemption (Brown v Liberty Loan Corp., supra, p 1376).
In weighing these interests against the Supreme Court pronouncements in prejudgment deprivation cases, the Fifth Circuit in Brown (supra, p 1366) decided that a postjudgment creditor’s interest in creating a secure debtor resource for collection was entitled to greater weight than his prejudgment counterpart. However, in cases such as these involving statutorily exempt assets, the opposite appears to be true. It is well to note that in Mitchell (supra) — the most conservative of the prejudgment opinions — the majority opinion placed great reliance upon the relative title rights of the debtor and creditor in the property subject to the sequestration procedure therein held valid, stressing that the creditor had "a vendor’s lien” (id, p 604), "current, real interests in the property” (id, p 604), and a "prior interest in the property attached” (id, p 614). In this same manner, Justice Powell in his concurring opinion distinguished Sniadach (supra, p 628, n 3): "[Sniadach] involved a prejudgment garnishment of wages in which the creditor had no pre-existing property interest * * * We deal *729 here with mutual property interests, both of which are entitled to be safeguarded.”
Whatever the interest of a judgment creditor in the general assets of his debtor subject to collection, it is clear that he lacks any property right in exempt assets. The petitioners before us successfully asserted that funds restrained in their respective bank accounts were comprised wholly of Social Security (Cole) and veterans’ (Reynolds) disability benefits,[1] both of which are categorically protected from "attachment, levy, or seizure by or under any legal or equitable process whatever” (US Code, tit 38, § 3101, subd [a] and see the nearly identical proscription in US Code, tit 42, § 407).[2] In a like manner, CPLR 5201 (subds [a], [b]) specifically exclude all exemptions — these as well as those accorded by CPLR 5205 and 5206 — from the otherwise broad definitions of debt and property subject to the enforcement procedures under article 52. It is apparent, therefore, that the debtor’s entitlement to the exemptions is at least as strong as the creditor’s right to seize the subject property in satisfaction of the judgment.
As a consequence, we conclude that the utter lack of any provisions for notice to the debtor in CPLR 5222, 5230 and 5232 violates due process. While the underlying judgment and its "foregoing proceedings serve to alert the judgment debtor that statutory means of enforcing the judgment may be used” (Brown v Liberty Loan Corp., 539 F2d 1355, 1363, supra), the debtor here is made aware of neither the necessity to claim that his assets are exempt, nor the time and manner in which to do so. Nor do we view as realistic the argument that the debtor, on notice of a pending suit against him, would possess the sophistication to change the form in which his assets are held in anticipation of garnishment.
While it is apparent that prior notice of intent to restrain assets might facilitate their secretion, negotiation, or transfer by a debtor acting in bad faith (Mitchell v Grant Co., 416 US 600, 606, supra), it cannot be gainsaid that the "timing and meaningfulness of the judicial determination of the exemption *730 issue is * * * dependent on the debtor’s awareness of the need to apply for the exemption” (Brown v Liberty Loan Co., supra, p 1368). Simultaneous, or at least timely service upon the debtor of a copy of the CPLR 5222 restraining notice or CPLR 5230 execution with service upon the garnishee or levy against property in the latter’s possession would provide the debtor with adequate information as to the necessity for and the forum in which to press an exemption claim. At the same time, the assets — temporarily frozen by restraint or levy— would constitute a secure creditor resource for collection, subject to divestiture only by the debtor’s claim of exemption successfully asserted and proven. Finally, we feel that requiring issuance of some notice to the judgment debtor when nonwage assets in the hands of third parties are restrained is no more burdensome than that required before imposition of income executions upon a garnishee under CPLR 5231 (subd [c]).
Once the judgment debtor has been guaranteed timely notice of a restraint upon his assets, we believe that the options provided by article 52 for pressing his exemption claim are adequate. Unlike the circumstances of prejudgment restraint, here the liability issue has already been resolved against the debtor, assumedly after adequate notice and ample opportunity to be heard (cf. Sniadach v Family Finance Corp. of Bay View, 395 US 337, 343, supra [concurring opn of Harlan, J.]; First Nat. Bank v Hasty, 410 F Supp 482, 488, supra). The restraints imposed upon his assets are entitled — as they should be — to a greater presumption of validity than their counterparts in a prejudgment seizure- situation (effected after ex parte application upon sworn documents of entitlement) held constitutional in Mitchell v Grant Co., 416 US 600, 606, supra).
The postjudgment restraint or levy is subject to divestiture by the debtor, but the burden of claiming and proving an exemption is upon him (First Nat. Bank v Hasty, supra, p 488; Tuckman v Hayward, 26 Misc 2d 45, 46). This is entirely appropriate in that he alone possessed the facts necessary to prove his entitlement. These proceedings amply illustrate that neither the judgment creditor, his attorney, nor the garnishee bank may have any knowledge of the source of the funds in the debtor’s bank accounts, unlike the postjudgment restraint of wages or household goods notoriously subject to statutory exemption. Thus, in our view, to impose a constitu *731 tional requirement of a sworn affidavit of nonexemption in advance of restraint would be both unnecessary and futile (cf. Betts v Tom, 431 F Supp 1369, 1377, supra; but, see, Brown v Liberty Loan Co., supra, p 1369).
Finally, it appears that CPLR article 52 provides the judgment debtor — once notified of the restraint upon assets subject to exemption — with sufficient opportunity to be heard. Were he limited, as petitioners suggest, to the commencement of a plenary proceeding or action to either claim his exemption in advance of disposition (CPLR 5239) or to recover retrospective damages for wrongful taking or injury (see CPLR 5205, subd [b]), further constitutional issues might arise in placing upon the debtor the burden of initiating suit while subjecting him to the "delays and uncertainties inherent in any judicial proceeding” (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 165, supra).
However, CPLR 5240 provides in pertinent part as follows: "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.” (Emphasis added.) While obviously addressed to discovery in aid of enforcement pursuant to CPLR 5223 and 5224 (March v March, 54 AD2d 886, 887; Gorea v Pinsky, 50 AD2d 713), this section has been liberally construed to permit motions to vacate a restraining notice (Plaza Hotel Assoc. v Wellington Assoc., 84 Misc 2d 777, 778, supra); to vacate execution and void levy (Matter of Wolfe v Seniuk, 76 Misc 2d 860, 861); to restrain collection of judgments (Bonwit-Teller, Div. of 721 Corp. v Rosenstiel, 75 Misc 2d 108, 109); in sum, "to protect judgment debtors from the harsh results of lawful enforcement procedures” (Wandschneider .v Bekeny, 75 Misc 2d 32, 35 and cases cited therein). Discretion vested in the court by CPLR 5240 is sufficiently broad to permit "harmonizing the judgment debtor’s interest in avoiding irreparable family harm resulting from execution * * * with the legitimate interest of a creditor in securing payment of a valid debt.” (Holmes v W. T. Grant, Inc., 71 Misc 2d 486, 487.)
Under CPLR 5240, the debtor is not relegated to commencing a plenary suit but may make his claim on motion in the forum in which the underlying judgment was entered, pursuant to CPLR 5221 (subd [a]) (6 Weinstein-Korn-Miller, NY Civ Prac, pars 5240.02, 5240.03) and only on such notice — and *732 thus with such speed — as the court may deem appropriate to the circumstances. Nor need a bond be posted to seek dissolution of the restraint, unless the facts warrant (cf. Brown v Liberty Loan Co., 539 F2d 1355, 1369, supra). While not "guaranteeing” a postrestraint hearing on the exemption, article 52 provides sufficient opportunity for a speedy postrestraint determination of the debtor’s exemption claims once asserted.
In conclusion, on the facts presented here, the doctrine of Endicott Corp. v Encyclopedia Press (266 US 285, supra) appears to be "irreconcilable with evolving concepts of due process” (Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 19, supra), and CPLR 5222, 5230 and 5232 must be deemed unconstitutional as applied to restraint of a debtor’s exempt assets in the hands of third parties, absent adequate provision for notice thereof by service of the restraining notice or execution upon the debtor.

. It must be noted that exempt assets of this class — potentially subject to postjudgment restraint — either did not exist in 1924, when Endicott Corp. (supra) was decided, or were not so common a source of income to an average judgment debtor as they appear to be today.

. These exemptions attach to the funds deposited by the judgment debtor in checking or savings accounts (Matter of Household Finance Corp. v Chase Manhattan Bank, 91 Misc 2d 141, 142).