**Dolores K. DEARY and Harvey London, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**GUARDIAN LOAN COMPANY, INC., Chase Manhattan Bank, N.A., Mullooly Jeffrey, Rooney & Flynn, Citibank N.A., European-American Bank, Chemical Bank, Sennet & Krumoltz, Lawrence H. Cooke, Chief Judge and the New York Court of Appeals, the Administrative Board of the New York Courts and Herbert B. Evans, Chief Administrative Judge of the United Court System of New York, Muriel Siebert, Superintendent of Banks, Defendants.**

No. 80 Civ. 1976 (MEL).

United States District Court, S. D. New York.

March 2, 1982.

Toby B. Golick, Legal Services For The Elderly, New York City, Jane G. Stevens, Brooklyn Legal Services Corp. B., Brooklyn, N. Y., for plaintiff.

Mullooly, Jeffrey, Rooney & Flynn, Carle Place, N. Y., attys. pro se and for Guardian Loan Co., Inc.

Andrew S. O'Connor, New York City, for Chase Manhattan Bank, N.A.; Richard K. Matanle, II, New York City, of counsel.

Shearman & Sterling, New York City, for Citibank, N.A.

Sahn, Shapiro & Epstein, New York City, for European-American Bank.

John B. Wynne, New York City, for Chemical Bank.

Sennett & Krumholz, attys. pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for Lawrence Cooke, Chief Judge, Herbert B. Evans, Chief Administrative Judge of the United Court System of N. Y., and Muriel Siebert,

Superintendent of Banks; Jeffrey Slonim, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

Dolores K. Deary and Harvey London sue for declaratory, injunctive and compensatory relief on behalf of themselves and all other judgment debtors in the State of New York who have property exempt from restraint and execution under various state and federal laws. They contend that New York procedures for restraint and execution on judgments, N.Y.C.P.L.R. §§ 5222, 5230 and 5232, violate the due process and su-premacy clauses of the United States Constitution because they do not provide the judgment debtor with notice of, or an opportunity to challenge, the restraint or execution authorized by New York law.

Under § 5222,[1] a judgment creditor's attorney, acting as an officer of the court, may issue a restraining notice and serve it upon any person except the judgment debtor's employer, with the effect of freezing the debtor's assets which such person may hold, up to twice the amount of the judgment. Section 5230[2] permits the creditor's attorney or the clerk of the appropriate

1. Section 5222 provides:

"(a) Issuance; on whom served; form; service. A restraining notice may be issued by the clerk of the court or the attorney for the judgment creditor as officer of the court. It may be served upon any person, except the employer of a judgment debtor where the property sought to be restrained consists of wages or salary due or to become due to the judgment debtor. It shall be served personally in the same manner as a summons or by registered or certified mail, return receipt requested. It shall specify all of the parties to the action, the date that the judgment was entered, the court in which it was entered, the amount of the judgment and the amount then due thereon, the names of all parties in whose favor and against whom the judgment was entered, and it shall set forth subdivision (b) and shall state that disobedience is punishable as a contempt of court. Service of a restraining notice upon a department or agency of the state or upon an institution under its direction shall be made by serving a copy upon the head of the department, or the person designated by him and upon the state department of audit and control at its office in Albany; a restraining notice served upon a state board, commission, body or agency which is not within any department of the state shall be made by serving the restraining notice upon the state department of audit and control at its office in Albany. Service at the office of a department of the state in Albany may be made by the sheriff of any county by registered or certified mail, return receipt requested.

(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor is effective only if, at the time of service, he owes a debt to the judgment debtor or he is in the possession or custody of property in which he knows or has reason to believe the judgment debtor has an interest, or if the judgment creditor has stated in the notice that a specified debt is owed by the person served to the judgment debtor or that the judgment debtor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor, shall be subject to the notice. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him, or until the judgment is satisfied or vacated, whichever event first occurs. A judgment creditor who has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor in an amount equal to twice the amount due on the judgment, the restraining notice is not effective as to other property or money.

(c) Subsequent notice. Leave of court is required to serve more than one restraining notice upon the same person with respect to the same judgment."

2. Section 5230 provides:

"(a) Form. An execution shall specify the date that the judgment was entered, the court in which it was entered, the amount of the judgment and the amount due thereon and it shall specify the names of the parties in whose

court to issue an execution, which is delivered or mailed to an enforcement officer, such as a city marshal or sheriff, and directs the enforcement officer to satisfy the judgment out of the property of the judgment debtor. Under § 5232,[3] the sheriff or mar-

favor and against whom the judgment was entered. An execution shall direct that only the property in which a named judgment debtor who is not deceased has an interest, or the debts owed to him, be levied upon or sold thereunder and shall specify the last known address of that judgment debtor. Where the judgment was entered in a court other than the supreme, county or a family court, the execution shall also specify the date on which a transcript of the judgment was filed with the clerk of the county in which the judgment was entered. Where jurisdiction in the action was based upon a levy upon property or debt pursuant to an order of attachment, the execution shall also state that fact, describe all property and debts levied upon, and direct that only such property and debts be sold thereunder. Where the judgment was recovered for all or part of a mortgage debt, the execution shall also describe the mortgaged property, specify the book and page where the mortgage is recorded, and direct that no part of the mortgaged property be levied upon or sold thereunder.

(b) Issuance. At any time before a judgment is satisfied or vacated, an execution may be issued from the supreme court, county court or a family court, in the county in which the judgment was first docketed, by the clerk of the court or the attorney for the judgment creditor as officer of the court, to the sheriffs of one or more counties of the state, directing each of them to satisfy the judgment out of the real and personal property of the judgment debtor and the debts due to him.

(c) Return. An execution shall be returned to the clerk of the court from which it was issued within sixty days after issuance unless the execution has been served in accordance with section 5231 or subdivision (a) of section 5232. The time may be extended in writing for a period of not more than sixty additional days by the attorney for the judgment creditor. Further like extensions may be given by the attorney for the judgment creditor unless another execution against the same judgment debtor has been delivered to the same enforcement officer and has not been returned.

(d) Records of sheriff. Each sheriff shall keep a record of executions delivered to him showing the names of the parties and the judgment debtor; the dates of issue and return; the date and time of delivery, which shall be endorsed upon the execution; the amount due at the time the execution was delivered to him; and the amount of the judgment and of the sheriff's fees unpaid, if any, at the time of the return."

3. Section 5232 provides:

"(a) Levy by service of execution. The sheriff shall levy upon any interest of the judgment debtor in personal property not capable of delivery, or upon any debt owed to the judgment debtor, by serving a copy of the execution upon the garnishee, in the same manner as a summons, except that such service shall not be made by delivery to a person authorized to receive service of summons solely by a designation filed pursuant to a provision of law other than rule 318. In the event the garnishee is the state of New York, such levy shall be made in the same manner as an income execution pursuant to section 5231 of the civil practice law and rules. A levy by service of the execution is effective only if, at the time of service, the person served owes a debt to the judgment debtor or he is in the possession or custody of property not capable of delivery in which he knows or has reason to believe the judgment debtor has an interest, or if the judgment creditor has stated in a notice which shall be served with the execution that a specified debt is owed by the person served to the judgment debtor or that the judgment debtor has an interest in specified property not capable of delivery in the possession or custody of the person served. All property not capable of delivery in which the judgment debtor is known or believed to have an interest then in or thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due or thereafter coming due to the judgment debtor, shall be subject to the levy. The person served with the execution shall forthwith transfer all such property, and pay all such debts upon maturity, to the sheriff and execute any document necessary to effect the transfer or payment. After such transfer or payment, property coming into the possession or custody of the garnishee, or debt incurred by him, shall not be subject to the levy. Until such transfer or payment is made, or until the expiration of ninety days after the service of the execution upon him, or of such further time as is provided by any order of the court served upon him, whichever event first occurs, the garnishee is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court. At the expiration of ninety days after a levy is made by service of the execution, or of such further time as the court, upon motion of the judgment creditor has provided, the levy shall be void except as to property or debts which have been transferred or paid to

shal is to levy upon property of the judgment debtor by serving a copy of the execution upon the garnishee, who in turn is required to transfer the debtor's property to the enforcement officer "forthwith" and is forbidden from otherwise transferring or interfering with the property. None of these procedures requires notice to the judgment debtor of the impending action. Section 5239,[4] however, permits "any interested person" to commence a special proceeding, prior to the application of property by the sheriff to the satisfaction of the judgment, to vacate the order or execution, void the levy, request a different disposition of the property, or request damages. Sec-

tion 5240[5] authorizes the court to deny, condition or modify the use of enforcement procedures.

Various state and federal statutes exempt certain assets from legal process. For example, Supplementary Security Income ("SSI") which Deary receives, is exempt under 42 U.S.C. §§ 407 and 1383. Social Security benefits, which London receives, are exempt under 42 U.S.C. § 407, and pension payments, which London also receives, are 90% exempt under 29 U.S.C. § 1056(d). A list of the laws which plaintiffs claim exempt assets from legal process is set forth in the margin.[6]

---

the sheriff or as to which a proceeding under sections 5225 or 5227 has been brought. A judgment creditor who has specified personal property or debt to be levied upon in a notice served with an execution shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor, for any damages sustained by reason of the levy.

(b) Levy by seizure. The sheriff shall levy upon any interest of the judgment debtor in personal property capable of delivery by taking the property into his custody without interfering with the lawful possession of pledgees and lessees. The sheriff shall forthwith serve a copy of the execution in the manner prescribed by subdivision (a) upon the person from whose possession or custody the property was taken."

4. Section 5239 provides:

"Prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt, by serving a notice of petition upon the respondent, the sheriff or receiver, and such other person as the court directs, in the same manner as a notice of motion. The proceeding may be commenced in the county where the property was levied upon, or in a court or county specified in subdivision (a) of section 5221. The court may vacate the execution or order, void the levy, direct the disposition of the property or debt, or direct that damages be awarded. Where there appear to be disputed questions of fact, the court shall order a separate trial, indicating the person who shall have possession of the property pending a decision and the undertaking, if any, which such person shall give. If the court determines that any claim asserted was fraudulent, it may require the claimant to pay to any party adversely affected thereby the reasonable expenses incurred by such party in the pro-

ceeding, including reasonable attorneys' fees, and any other damages suffered by reason of the claim. The court may permit any interested person to intervene in the proceedings."

5. Section 5240 provides:

"The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 is applicable to procedures under this article."

6. According to the Amended Complaint, ¶ 2, "[t]hese include but are not limited to

A. 42 U.S.C. § 407 and § 1383 protecting Social Security and Supplemental Security Income;

B. 38 U.S.C. § 3101 and CPLR § 5202(e) protecting Veteran's benefits;

C. N.Y.Labor Law § 595(2) protecting unemployment benefits;

D. N.Y. Workmen's Compensation Law § 33 and § 218(2) protecting Workmen's Compensation and disability benefits;

E. N.Y. Social Services Law § 137 and § 137(a) protecting public assistance benefits and earnings of recipients of public assistance and Supplemental Security Income income.

F. 29 U.S.C. § 1056(d), 45 U.S.C. 231(m), 5 U.S.C. § 8246, N.Y. Retirement and Soc. Sec. L. § 110, N.Y.Unconsol. Law § 934, N.Y. Education Law § 524, all protecting various public and private pensions in part or in full.

G. 46 U.S.C. § 601 protecting seamen's wages;

H. N.Y. Ins. Law § 166(1) and 166(3) protecting certain insurance benefits and proceeds from annuity contracts;

I. N.Y.Gen.Mun.L. § 205 protecting Longshoremen's and Harbor Workmen's Compensation benefits;

J. N.Y.Gen.Mun.L. § 205 and N.Y.Vol.Fir. Ben.L. § 23 protecting volunteer firemen's death and disability benefits;

Plaintiffs move for partial summary judgment (1) declaring that §§ 5222, 5230 and 5232 are unconstitutional insofar as they permit restraint and levy upon exempt assets without adequate notice or an opportunity to be heard and (2) enjoining further use of those enforcement procedures. Alternatively, plaintiffs move for a preliminary injunction against the use of the challenged procedures unless judgment debtors are provided adequate notice and an opportunity for a prompt hearing. Citibank, N.A. ("Citibank"), Chemical Bank, Chase Manhattan Bank, N.A. ("Chase") and European-American Bank ("EAB") cross-move for summary judgment. In addition, plaintiffs move for certification of the class and Chase moves to dismiss the action as a class action.

## I.

Plaintiffs contend that the New York procedures in question are unconstitutional because they do not require that the judgment debtor be given notice at any point in the procedure and do not accord the debtor an opportunity to assert his or her possible exemptions to legal process. While a debtor presumably realizes at some point that his or her assets are gone or unavailable, and while some garnishees, particularly banks, may voluntarily inform their depositors of the action taken with respect to their accounts, plaintiffs contend that such notice is at best haphazard and in any event does not sufficiently inform the debtor of what has happened or what rights the debtor may have.

Plaintiffs rely on the recent decision of the Third Circuit Court of Appeals in *Finberg v. Sullivan*, 634 F.2d 50 (1980), which found similar Pennsylvania restraint and enforcement procedures unconstitutional. Plaintiffs contend that the procedures in

New York are less sensitive to due process considerations than those invalidated in *Finberg* since the Pennsylvania enforcement procedures at least required that a copy of the writ of execution be served on the debtor. The *Finberg* court held that even that notice was insufficient because it did not inform the judgment debtor of the exemptions which might have been available or of the procedures by which to assert the exemptions. Plaintiffs further contend that § 5240, which authorizes the court to hear objections to enforcement procedures, is an inadequate safeguard under the New York procedures because, without notice of the restraint or execution and the procedures for asserting possible exemptions, the judgment debtor is, as a practical matter, unable to assert his rights before his property is taken.

Plaintiffs concede that the Supreme Court's decision in *Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924) can be read as inconsistent with their argument. In *Endicott-Johnson* the Court held that the due process clause did not require notice before the garnishment of wages for the satisfaction of a judgment, observing that the notice for the proceeding leading up to the judgment gave the judgment debtor advance warning of later proceedings to enforce the judgment. Plaintiffs contend, however, that *Endicott-Johnson* should no longer be followed because it reflects a different era of due process jurisprudence which has been largely eclipsed by more recent due process decisions. Moreover, plaintiffs, like the *Finberg* court, emphasize that in *Endicott-Johnson* the Court did not consider the debtor's right to assert exemptions. They note that in 1924 possible exemptions were limited to clearly identifiable personal

K. CPLR § 5202(c)(d)(1) protecting pay and benefits of certain members of the United States armed forces;

L. CPLR § 5202(d)(2) protecting ninety percent of certain earnings for personal services;

M. CPLR 205(c), (d)1 protecting ninety percent of certain trust income;

N. CPLR 5025(d)(3) protecting Alimony and Child Support payments;

O. CPLR 5205(f) protecting ninety percent of the proceeds from sale of milk products on a farm operated by a debtor;

P. N.Y. Workmen's Compensation Law § 313 protecting benefits to civil defense volunteers;

Q. 50 U.S.C. Appx. § 9(f) protecting funds vested in the Alien Property Custodian."

items, such as family bibles, stoves, sewing machine, etc., and that the risk of erroneous seizures was accordingly minimal. By contrast, they state that in the period since 1924 an enormous expansion of public welfare and pension statutes has occurred with the creation of attendant exemption rights.

Plaintiffs argue that the same test of balancing interests utilized in a determination of the required notice in a pre-judgment seizure context in cases like *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) should be applied to determine the due process requirements in the post-judgment context. They maintain that the need for notice and an opportunity to be heard is as great here as in *Fuentes* or *Sniadach* because some judgment debtors may not have received notice of the underlying proceeding and others may have permitted a default judgment to be entered because they were confused or intimidated by the court proceedings or may have agreed that they owed the debt. Plaintiffs contend that these debtors are likely to presume that once a judgment has been entered, there is nothing they can do to prevent collection of the debt from whatever funds they may possess. Like the plaintiffs in *Memphis Light Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), plaintiffs argue that the enforcement procedures at issue are likely to be used against the assets of persons of various higher and lower levels of education, experience and resources, and that notice reasonably calculated to inform them of possible exemptions and the procedures for asserting exemptions is accordingly required.

In addition to their due process challenge, plaintiffs also argue that the New York procedures violate the supremacy clause because they permit a judgment creditor to deny the debtor access to and the benefits of income which Congress has mandated should be exempt from such procedures.

Defendants maintain that, under *Endicott-Johnson*, the New York enforcement procedures are constitutional. They assert that the *Endicott-Johnson* rationale, that the notice for the proceeding leading up to the judgment puts the debtor on notice of the possibilities of enforcement, retains vitality and that plaintiffs' reliance on pre-judgment attachment cases is therefore misplaced. Defendants also contend that *Finberg* should not be followed here because (1) the *Finberg* court gave too little weight to the judgment creditor's interests in enforcing his judgment, (2) in *Finberg*, unlike the present case, the judgment creditor knew that the debtor's funds were exempt, (3) the funds at issue in *Finberg* were entirely exempt, while the funds of Deary and London were not entirely exempt, and (4) the Pennsylvania enforcement procedures had no provision for relief from the post-judgment enforcement, while New York provides such relief under §§ 5239 and 5240.

Defendants argue further that on the date of the restraint of her checking account, none of Deary's funds were exempt since Deary also receives income from working at odd-jobs, such as baby sitting, and had borrowed money from a friend, and it was this income which had been deposited in her account immediately prior to the restraint. With respect to London, defendants similarly maintain that none of his funds against which they proceeded were exempt because $600. or so of the money in London's account did not come from Social Security or pension benefits. Accordingly, defendants claim that summary judgment should not be granted to plaintiffs because a genuine issue of material fact exists as to whether the funds in question were actually exempt.

EAB and Citibank, the banks at which Deary and London maintained the checking accounts against which other defendants proceeded, also argue that plaintiffs' motion should be denied because the banks provided Deary and London with actual notice of the action taken with respect to their accounts. They contend that while the notice given here did not include information as to the possible exemptions which might

be available, nor the procedures for challenging the enforcement (and in Deary's case merely stated that her account had been debited in accordance with a subpoena), the due process clause does not require that the judgment debtor be informed of particular grounds or procedures for challenging the action. Defendants therefore conclude that, whatever constitutional questions may be presented by the lack of notice provision in the New York enforcement procedures, at least in this case notice was given and the statutory procedures are therefore not unconstitutional as applied to Deary and London. Defendants also maintain, with respect to the matter of notice, that if any notice is required, such action is an obligation of the various government agencies administering the programs providing exempt income, and not that of private, and possibly adverse, parties.

Finally, defendants contend that the procedures at issue do not violate the supremacy clause because, under §§ 5239 and 5240, judgment debtors have a prompt opportunity to challenge the enforcement and may thereby prevent significant interruption of Congressionally mandated benefits.

Plaintiffs reply that defendants' arguments as to whether or not the funds in the accounts of Deary and London were actually exempt when enforcement was undertaken is irrelevant to their motion for partial summary judgment, which is directed to the constitutionality of the procedures for enforcement, not to the underlying merits of plaintiffs' particular rights to exemptions. Plaintiffs argue that it is sufficient for this purpose that they had at least a colorable claim to exemption. In any event, plaintiffs disagree with defendants that their funds were not exempt. They contend that Deary's income in excess of her SSI payment was exempt under New York law.[7] With respect to London's account, plaintiffs maintain that defendants erroneously assume that a "first in-first out" accounting approach should be utilized to trace intermingled funds.

## II.

■ Plaintiffs' motion for declaratory and injunctive relief is granted. We agree with the analysis presented in *Finberg v. Sullivan, supra,* and conclude that, like the Pennsylvania procedures considered there, the New York post-judgment enforcement procedures are constitutionally defective in failing to afford the judgment debtor adequate protection against erroneous restraint or execution.

The defendants' reliance on the Supreme Court's holding in *Endicott-Johnson Corp. v. Encyclopedia Press, Inc., supra,* that due process does not require notice and an opportunity to be heard before the issuance of a writ to garnish a judgment debtor's wages, is misplaced. First, in reasoning that the judgment debtor "has had his day in court" in the action on the merits and "must take notice of what will follow," 266 U.S. at 288, 45 S.Ct. at 62, the Court did not consider the possibility, at the heart of plaintiffs' claim here, that the enforcement on the judgment might be taken with respect to property exempt from such procedures. *See Finberg v. Sullivan, supra* at 56–57. While notice of and an opportunity to be heard on the merits is directed to the question whether the debt is actually owed, the attempt to enforce the judgment raises the distinct issue whether particular property of the judgment debtor is available to satisfy the judgment. Thus, regardless of whether the debtor wishes to be heard on the merits or not, he or she has a distinct interest in being informed of and having an opportunity to challenge specific attempts to satisfy the judgment.

Second, the Supreme Court's more recent opinions in cases involving pre-judgment seizure demonstrate that due process jurisprudence has developed away from the categorical analysis reflected in *Endicott-Johnson* toward an approach which balances competing interests to determine the appro-

---

**7.** Plaintiffs rely on N.Y. Social Services Law §§ 137 and 137–a and N.Y.C.P.L.R. § 5205(d)(2).

priate level of procedural protections before one may be deprived of the use of property. *See, e.g., Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *see also Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). While the fact that in this case the creditors had obtained a judgment on their claims of indebtedness may alter the weight of the competing interests from those considered in pre-judgment cases, it cannot alter the method to be utilized in determining the procedural protections applicable in the enforcement context. The judgment reflects only the vindication of the creditor's claim of the debt owed, not the right to use any particular procedure or to satisfy the judgment with any particular property. "A debtor might still defeat [the creditor's] right with any of a number of defenses not adjudicated in the action on the merits, such as in the present case with a claim of exemption." *Finberg v. Sullivan, supra* at 58. Accordingly, as in the pre-judgment cases, the post-judgment enforcement actions must be considered as "provisional" measures during which the judgment debtor retains a protectible interest in the property until it is determined to be legally available in satisfaction of the judgment. It follows that, as in the pre-judgment context, it is appropriate here to evaluate the constitutional sufficiency of the New York protections by balancing the competing interests at stake. *See Finberg v. Sullivan, supra; Brown v. Liberty Loan Corp.,* 539 F.2d 1355, 1365 (5th Cir. 1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977); *Betts v. Tom,* 431 F.Supp. 1369, 1374 (D.Haw.1977); *Cole v. Goldberger, Pederson & Hochron,* 95 Misc.2d 720, 410 N.Y.S.2d 950 (Sup.Ct. Broome City 1978) (holding New York enforcement procedures unconstitutional because of lack of notice); *but see Warren v.*

*Delaney,* No. 1155318 (N.Y.Sup.Ct., Westchester Cty., June 11, 1981) (holding New York procedures constitutional on the basis of *Endicott-Johnson* ).

The post-judgment creditor has a strong interest in prompt and inexpensive satisfaction of the debt evidenced by the judgment. This interest is weightier than the creditor's interest in the prejudgment context insofar as here there is no question as to the debtor's liability. Any delay and expense involved in enforcing the judgment may diminish the ultimate value of the recovery. *See Finberg v. Sullivan, supra* at 58; *Cole v. Goldberger, Pederson & Hochron, supra* at 728, 410 N.Y.S.2d 950. In addition, the ability to seize monetary assets, such as the bank accounts at issue here, is in the creditor's interest since it is faster and less expensive than enforcement against other property. *Finberg v. Sullivan, supra* at 58.

On the other hand, the judgment debtors' interests in the property in the context of the claims at issue here are compelling. The exemptions asserted by plaintiffs are designed to protect their means of purchasing the basic necessities of life. Even without assuming that all of the assets in plaintiffs' accounts are or were exempt, the fact that plaintiffs receive a substantial portion of exempt income and the likelihood that given enforcement on their bank accounts would include exempt assets leads to the conclusion that any restraint or execution on plaintiffs' bank accounts may seriously threaten plaintiffs' ability to provide for themselves. Plaintiffs accordingly have a compelling interest in being notified of any such action and in being afforded a prompt opportunity to challenge such enforcement and assert their exemptions. *Finberg v. Sullivan, supra* at 58; *Cole v. Goldberger, Pederson & Hochron, supra* at 729, 410 N.Y. S.2d 950.

In evaluating whether the New York enforcement procedures provide a "constitutional accommodation of the conflicting interests ..." *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 607, 94 S.Ct. 1895, 1900, 40 L.Ed.2d 406 (1974), it is necessary to consider the "probable value, if any, of addi-

tional or substitute procedural safeguards," and the "fiscal or administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ With respect to notice, the New York statutory provisions provide no requirement that the judgment debtor be notified of the enforcement action. Notice of the seizure, or the attempt to seize, property of a debtor is a fundamental element of due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The salutory value of notice in this context is self-evident— it would enable the judgment debtor to assert his or her exemptions and thus prevent or correct an erroneous restraint or execution which would otherwise have the effect of depriving the debtor of property which may be necessary to meet the basic necessities of life. Moreover, whether notice is to be given by the judgment creditors themselves or by an agency of the state, it cannot be said that requiring notice in this context imposes any significant additional expense or delay, especially in comparison to the degree of deprivation likely to result in the absence of such notice. Thus, as the New York court concluded in *Cole v. Goldberger, Pederson & Hochron, supra* 95 Misc.2d at 729, 410 N.Y.S.2d 950, "the utter lack of any provisions for notice in CPLR sections 5222, 5230 and 5232 violates due process." *But see Warren, et al. v. Delaney, et al.*, No. 1155318 (N.Y.Sup.Ct., Westchester Cty., June 11, 1981).

Defendants' contention that the notice given to Deary and London in the present case was sufficient is unpersuasive. Defendants concede that the only notice received by Deary was an "Advice of Debit" form sent by Chase which merely stated that the account was debited in a particular amount pursuant to a subpoena from Guardian; and that the only written notice received by London was a letter from EAB informing him that his account had been restrained and of the name and address of the creditor's attorney (Amended Complaint, Exs. A and B). Neither London nor Deary was informed of exemptions to which they might have been entitled nor of the procedures for asserting their challenges. Defendants' argument that the notices were nevertheless sufficient because due process does not require that a debtor be informed of particular grounds or procedures for challenging the action is substantially undercut by the Supreme Court's holding in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). In *Memphis* the Court held that a notice of termination of utility service was constitutionally inadequate because it did not advise the customer of the availability of a procedure for contesting the proposed termination. " 'An elementary and fundamental requirement of due process ... is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 13, 98 S.Ct. at 1562, quoting *Mullane v. Central Hanover Trust Co., supra* 339 U.S. at 314, 70 S.Ct. at 657. As in *Memphis*, restraint and execution procedures can be expected to be taken against people of "various levels of education, experience, and resources." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. at 14 n.15, 98 S.Ct. at 1562 n.15. Requiring only that such persons be informed of the action taken or contemplated, as defendants urge, reflects a "restrictive view of the process due in the context of this case [which] would erect an artificial barrier between the notice and hearing components of the constitutional guarantee of due process." *Id.* And, just as the customers in *Memphis* were entitled to notice of the procedures for challenging termination, judgment debtors in the context of this case are entitled to notice of both the exemptions to which they may be entitled and the procedures for asserting those exemptions. As the *Finberg* court observed:

> "Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause

serious hardships. These problems are probably most acute for those judgment debtors who have few immediate sources of necessary funds other than money held in a bank account. Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption." 634 F.2d at 62.

Since they were not informed of the exemptions to which they may have been entitled or the procedures for asserting those exemptions, Deary and London were not provided with the constitutionally required notice.

Defendants' argument that the New York enforcement procedures meet constitutional standards because §§ 5239 and 5240 provide an opportunity for judgment debtors to challenge the enforcement action is also unpersuasive. Without notice of their possible exemptions, the enforcement action taken or contemplated, and the §§ 5239 and 5240 procedures themselves, judgment debtors in this context are likely not to know that any relief may be available. Meanwhile they may be deprived of the use of the property despite the theoretical availability of relief. Thus, at least without appropriate notice, the provision of post-enforcement remedies cannot satisfy constitutional requirements. Moreover, due process requires an opportunity to be heard "at a meaningful time." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Assuming without deciding that some prompt *post*-enforcement procedure would satisfy constitutional requirements, the opportunity to challenge the enforcement action must not be unnecessarily delayed. The debtor's interest in asserting exemptions to regain money which may be required for meeting the basic expenditures of living demands an especially prompt hearing. *See Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979). Recognizing the presumption of constitutionality attaching to legislative acts, it is nevertheless clear that the sufficiency of the §§ 5239 and 5240 procedures depends upon their application in practice and the debtor's actual ability to secure relief without significant delay. No party in this action has presented evidence of the use of §§ 5239 and 5240 to claim exemptions from restraint and execution, and thus we are unable to determine if those provisions would in practice satisfy the need for a prompt opportunity to be heard. *See Finberg v. Sullivan, supra* at 59–60.

In addition, defendants' argument that Deary and London are not entitled to summary judgment because their property was not actually exempt at the time enforcement actions were taken against their accounts, misses the point of the present determination. As we understand plaintiffs' motion for partial summary judgment and defendants' cross-motion for summary judgment, what is at issue is the constitutionality of the New York procedures for enforcement and the procedures taken with respect to these plaintiffs, not the underlying merits of plaintiffs' assertions that their property was exempt. Regardless whether plaintiffs ultimately demonstrate that their property was exempt from enforcement or not, in light of their colorable claims that their property was exempt, they were entitled to the notice described above and a prompt opportunity to challenge the restraint or execution. These procedural rights were violated in the present case. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

Finally, New York's current post-judgment enforcement procedures are insufficient to meet the requirements of the supremacy clause. The exemption of benefits from legal process under various federal laws has the purpose of ensuring that the beneficiary of the federal program has uninterrupted use of benefits which are provided to protect against the "hardship of existence." *United States v. Silk*, 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947) (considering benefits under the Social Security Act). Under the New York procedures, the lack of provision for notice raises the danger that a judgment debtor may never receive the proper information to as-

sert an exemption to which he may be entitled, and the lack of a meaningful opportunity for prompt hearing suggests that the interruption in benefits for one who wished to challenge the enforcement could be significant. Accordingly, the New York enforcement procedures "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), and violate the supremacy clause. *See Finberg v. Sullivan, supra* at 62–64.

### III.

Chase's motion to dismiss this action as a class action on the ground that plaintiffs failed to move for a class action determination within sixty days of asserting its class claims as prescribed by Rule 11A(c) of the Civil Rules of the Southern District of New York is denied. Plaintiffs have explained their failure to move sooner as an attempt to accommodate the various defendants who requested extensions of time to answer the complaint. (Affidavit of Toby Golick, Esq., July 22, 1980). In light of plaintiffs' apparent good faith and the lack of prejudice to defendants, the drastic remedy of dismissal of the class action is not warranted despite the infraction of the local rule. *See Gilinsky v. Columbia University*, 62 F.R.D. 178 (S.D.N.Y.1974).

Plaintiffs move for certification of a class of persons consisting of "all judgment debtors in New York State who have property exempt from restraint and execution under applicable federal and New York State laws." (Motion for Certification of a Plaintiff Class under Rule 23, July 18, 1980). Defendants oppose the motion on the grounds that (1) the proposed class is too broad since it includes persons who do not have accounts with the defendant banks and thus as to such persons the defendants have not "acted or refused to act on grounds generally applicable to the class" as required under Fed.R.Civ.Pr. 23(b)(2); (2) the named plaintiffs claims are not typical of the class because they received nonexempt income and at least part of their assets which were affected consisted of nonexempt income; (3) the named plaintiffs are inadequate class representatives because they do not understand the litigation or the significance of their responsibilities as class representatives, and (4) plaintiffs have not demonstrated that the purported class is too numerous to be joined.

Plaintiffs answer that the accounts of both Deary and London consisted entirely of exempt assets, that even if nonexempt assets were intermingled, the exempt assets retain their exempt status, and that, in any event, the validity of the claims of exemption are not at issue here, but rather the procedures necessary for a realistic opportunity for judgment debtors with possible exempt income to assert their claims for exemption. Moreover, plaintiffs dispute the assertion that they do not understand the significance of their role as class representatives and contend that their lack of understanding of particular legal procedures merely serves to underscore the need for adequate notice in this context. They contend that so long as their counsel is adequate and urges the interests of the class and no conflict exists between the claims of the named plaintiffs and the rest of the class, it is not necessary that they understand the particular legal procedures by which their claims of unconstitutionality are vindicated. Plaintiffs also argue that the purported class is not too broad, but rather properly includes persons who may open accounts with Chase in the future.

While it is true, as defendants contend, that the class as currently proposed is too broad insofar as it includes persons who do not have accounts with the defendants banks, that defect is easily corrected by limiting the purported class to those who currently have accounts with the defendants or those who may open such accounts in the future.

The defendants' next contention, that the named plaintiffs' claims are not typical of the claims of the class, is unpersuasive since the claims asserted here center around that issues of notice and hearing which are common to all judgment debtors receiving ex-

empt income regardless of whether their assertions of exemption are ultimately upheld or not. So long as a judgment debtor has a colorable claim to exemption of assets by virtue of his or her receipt of exempt income, the debtor shares the interests of the named plaintiffs in being afforded notice and an opportunity to be heard so that he or she may assert the exemption claim during any attempt to enforce a judgment from his possibly exempt assets. Similarly, the definition of the class to include those who receive some non-exempt income does not affect the identity of claims asserted on behalf of the class.

■ Moreover, while Deary and London at their depositions demonstrated a somewhat limited understanding of the details of this litigation, there is no requirement under Rule 23 that the named plaintiffs be able to understand the intricacies of the litigation or their role in it, *see Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–73, 86 S.Ct. 845, 850–51, 15 L.Ed.2d 807 (1966); *Wellman v. Dickinson*, 79 F.R.D. 341, 347 (S.D.N.Y.1978). Where, as here, the named plaintiffs contacted their attorneys seeking relief from a specific practice, they expressed the desire to see that the wrong allegedly done to them is not done to others, they have claims which are common to the claims of the rest of the class, no apparent conflict exists, and their counsel have diligently and competently urged the interests of the class, the requirement that the named plaintiffs adequately represent the class is satisfied despite their lack of sophistication in legal or financial matters. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968).

■ Finally, plaintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates. Plaintiffs have presented evidence that the number of Social Security recipients alone in the State of New York is approximately 2.8 million. It can reasonably be inferred that a significant number of these persons are or may become judg-

ment debtors and that they may currently hold or in the future open accounts with the defendant banks. Moreover, it is clear that the potential plaintiffs are likely to be widely dispersed throughout the state, and that it would be difficult to identify such persons and ascertain their addresses. In these circumstances, it must be concluded that joinder is impracticable. *See Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980); *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (D.Pa.1975); *Inda v. United Air Lines, Inc.*, 83 F.R.D. 1 (D.C.Cal.1979).

\*    \*    \*    \*    \*    \*

Plaintiffs' motion for partial summary judgment is granted. Defendants' cross-motions for summary judgment are denied. Plaintiffs' motion for certification of the plaintiff class is granted with the qualification that the class is limited to those judgment debtors who receive income exempt under state or federal law and who currently maintain or in the future hold an account at the defendant banks. Chase's motion to dismiss this action as a class action is denied.

Submit order on notice.